# IN THE COURT OF APPEALS OF IOWA

No. 17-1602
Filed January 10, 2018

**IN THE INTEREST OF J.D., T.D., C.D., D.D., and E.R.,**
**Minor Child,**

**S.B., Mother,**
 Appellant.

_____

Appeal from the Iowa District Court for Montgomery County, Amy L. Zacharias, District Associate Judge.

A mother appeals the juvenile court order temporarily removing her children from her care. **AFFIRMED.**

Sarah M. Hart of Reisinger, Booth, and Associates, P.C., L.L.O., Omaha, Nebraska, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Karen L. Mailander of Mailander Law Office, Anita, guardian ad litem for minor children.

Considered by Vogel, P.J., and Tabor and Bower, JJ.

**BOWER, Judge.**

A mother appeals the order temporarily removing her children from her care. We find the children were properly removed pursuant to Iowa Code section 232.102(5)(a) (2017). We affirm the juvenile court.

## I. Background Facts and Proceedings

The five children in this case ranged in age from three to twelve at the time of the removal hearing. In April 2017, the Iowa Department of Human Services (DHS) received a report of physical abuse against the father of four of the children. The father was arrested and charged with child endangerment. The mother and father were no longer in a relationship at the time of the incident. However, during the course of the investigation, it was discovered the mother's boyfriend, W.B., who lived in the mother's home with the children, was a registered sex offender.[1] DHS and law enforcement informed the mother and W.B. and he was required to leave the home. Two days later, the mother and W.B. married in order to avoid his removal.

After approximately one month, the mother and W.B. signed a safety plan requiring W.B. to leave the home. The children made statements to the caseworker they wanted W.B. to come back to the home and that his victim had been lying about the abuse. Near the end of May, the children were adjudicated to be children in need of assistance (CINA), and a no-contact order between W.B. and all of the children was entered. The mother did not understand why the no-contact order was entered and why allowing W.B. around the children presented a safety concern. It was also discovered the mother was pregnant

---

[1] In 2015, W.B. was convicted of second-degree child molestation in Missouri.

with W.B.'s child. However, the children were allowed to remain in the care of the mother.

DHS was immediately suspicious W.B. still had contact with the children, though it had no proof. The juvenile court specifically reminded the mother any violation of the no-contact order would result in the children being removed from her care. W.B. was pulled over in a traffic stop approximately two weeks later, and the mother and all five children were in the car with him. An ex-parte removal order was filed July 12, 2017. The juvenile court noted, the mother "now claims she will not allow contact between [W.B.] and the children and will do whatever is necessary to have her children returned to her care. Given [her] behaviors to this point, the Court finds that the children are not safe in her care and should be temporarily removed."

The children were placed in foster care, and the mother was granted supervised visitation. The mother complied with the case-plan requirements, but DHS remained concerned about her continued relationship with W.B. When the mother was directly asked by the juvenile court if she was comfortable allowing her children to have contact with a sex offender, she did not directly answer the question. Instead she noted W.B. planned to appeal his conviction and that she had spoken to some of W.B.'s children and they believed his victim lied about the abuse.

## II. Standard of Review

CINA proceedings are reviewed de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). We give weight to the juvenile court's findings of fact but are not bound by them. *In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001). The highest

concern in reviewing the proceedings are the best interests of the children. *Id.* The juvenile court's determinations must be made on the basis of clear and convincing evidence. Iowa Code § 232.96(2).

### III. Returning the Children to the Mother's Care

The mother first claims the juvenile court did not have clear and convincing evidence the children could not be returned to her care. A child should be allowed to remain at home with their parent whenever possible and should not be removed from the parent's care unless they cannot be protected from abuse. *Id.* § 232.102(5)(a). The juvenile court established a no-contact order to protect the children from W.B., a registered sex offender. The mother was unable or unwilling to understand the danger posed to the children by having contact with W.B. and continued to allow W.B. to have contact with the children. When questioned directly about whether she believed W.B. posed a danger to the children, the mother would not answer and instead defended W.B. We find there was clear and convincing evidence the mother would continue to violate the no-contact order and endanger the children.

### IV. Reasonable Efforts

The mother next claims DHS did not make reasonable efforts toward reunification and requests she be allowed "to parent her children, unsupervised, as she has completed all requirements from [DHS]." The wording of the request makes the claim somewhat ambiguous. However, at the time of the review hearing on September 28, 2017, the mother explicitly denied she was asking for additional services, such as unsupervised visitation. To the extent the mother's argument is a request for additional services, we find the issue was not

preserved. Generally issues must be presented to the juvenile court and ruled on before being raised on appeal. *In re R.J.*, 495 N.W.2d 114, 117 (Iowa App. 1992) (citation omitted).

The other alternative is a claim the children should be returned to the mother's care as the State failed to prove reasonable efforts were made by DHS. The mother claims "the Court lists services that have been provided . . . as well as recommendations from [DHS]. At the time of the Review/Modification Hearing, [the mother] was in compliance with the full list of recommendations . . ." We find the mother did not preserve any claim based on reasonable efforts as she did not request additional services from the juvenile court. We also reaffirm our findings above, noting the mother was unwilling to abide by the no-contact order, and therefore, the children could not be returned to her care.

## V. Least Restrictive Placement

The mother lastly claims foster care is not the least restrictive, appropriate placement for the children. The mother believes having the children returned to her care is the least restrictive placement, or in the alternative, having the children moved to a placement closer to her home would be less restrictive. However, the mother states her attorney "asked [DHS] multiple times to change placement of the children." This is insufficient to preserve the issue for appellate review. Generally an issue must be brought before the juvenile court and ruled on before it is raised on appeal. *R.J.*, 495 N.W.2d at 117. The mother's statement and a review of the record show no such request was made to the juvenile court. Therefore, we affirm the district court.

**AFFIRMED.**